Esther C. Rodriguez
Nevada State Bar No. 006473
**RODRIGUEZ LAW OFFICES, P.C.**
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Tel: (702) 320-8400; Fax: (702) 320-8401
info@rodriguezlaw.com

Alyssa J. White*
TX Bar No. 24073014
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Tel: (713) 352-1100; Fax: (713) 352-3300
awhite@mybackwages.com

*Pro hac vice application forthcoming*

*Attorneys for Gonzales and the Hourly Employees*

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| ISIAH GONZALES, Individually and On Behalf of Others Similarly Situated,<br><br>    Plaintiff<br><br>v.<br><br>REDPATH USA CORPORATION,<br><br>    Defendant. | Case No. _____<br><br>**ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>(1) Failure to Pay Overtime Wages (Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*);<br><br>(2) Failure to Pay for All Hours Worked Under Nevada Law (Nev. Rev. Stat. §§ 608.140 and 608.016).<br><br>(3) Failure to Pay Minimum Wages in Violation of the Nevada Constitution;<br><br>(4) Failure to Pay Overtime under Nevada Law (Nev. Rev. Stat. §§ 608.140 and 608.018); and<br><br>(5) Failure to Timely Pay All Wages Due and Owing Under Nevada Law (Nev. Rev. Stat. §§ 608.140 and 608.020-050). |

## ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT

### SUMMARY

1.    Isiah Gonzales (Gonzales) brings this class and collective action to recover unpaid wages and other damages from Redpath USA Corporation (Redpath) for violations of the Fair Labor Standards Act (FLSA) and Nevada law.

2.    Redpath employed Gonzales as one of its Hourly Employees (defined below).

3.    Redpath pays Gonzales and the other Hourly Employees by the hour.

4.    Gonzales and the other Hourly Employees regularly work more than 40 hours in a workweek.

5.    However, Redpath does not pay Gonzales and the other Hourly Employees for all their hours worked, including overtime hours.

6.    Rather, Redpath requires Gonzales and the other Hourly Employees to gather tools and equipment necessary to perform their job duties and suit out in protective clothing and safety gear necessary to safely perform their job duties "off the clock" prior the start of their shifts.

7.    Likewise, Redpath requires Gonzales and the other Hourly Employees to wash-up, change out of their safety gear and protective clothing, and store their tools and equipment "off the clock" following the end of their shifts (¶¶ 6 and 7 collectively Redpath's "pre/post shift off the clock policy").

8.    But Redpath does not pay Gonzales and the other Hourly Employees for hours worked before and after their shifts.

9.    Redpath's pre/post shift off the clock policy violates the FLSA and Nevada law by depriving Gonzales and the other Hourly Employees of wages, including overtime wages, for all hours worked.

10.    Likewise, Redpath's pre/post shift off the clock policy violates Nevada Law by depriving Gonzales and the other Hourly Employees of timely payment of earned wages for all hours worked upon termination of their employment.

11.     In addition to failing to pay Gonzales and the other Hourly Employees for all their hours worked, Redpath also fails to pay them overtime at the required premium rate.

12.     Instead, Redpath pays them what it labels "SUBSISTENCE" pay for days worked on site.

13.     Despite this subsistence pay compensating Gonzales and the other Hourly Employees for days and hours worked, Redpath fails to include this additional compensation for performing work in their regular rates of pay for overtime purposes (Redpath's "subsistence pay scheme").

14.     Redpath knows this subsistence pay must be, but is not, included in the Hourly Employees' regular rates of pay for overtime purposes.

15.     Redpath's per diem pay scheme violates the FLSA and Nevada law by depriving Gonzales and the other Hourly Employees of overtime at rates not less than 1.5 times their regular rates of pay—based on all remuneration—for hours worked in excess of 40 a workweek.

16.     Likewise, Redpath's per diem pay scheme violates Nevada law by depriving Gonzales and the other Hourly Employees of timely payment of earned wages for all hours worked, including overtime hours, upon termination of their employment.

**JURISDICTION & VENUE**

17.     This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

18.     This Court has supplemental jurisdiction of the state-law claims because they arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

19.     This Court has general personal jurisdiction over Redpath because it maintains its principal place of business in Nevada.

20.     Venue is proper because Redpath maintains its principal place of business in Sparks, Nevada, which is in this District. *See* 28 U.S.C. § 1391(b)(1).

## PARTIES

21.     Redpath employed Gonzales from approximately June 2024 until March 2025.

22.     Redpath classified Gonzales as non-exempt and paid him by the hour.

23.     Redpath subjected Gonzales to its pre/post shift off the clock policy and subsistence pay scheme.

24.     Gonzales' written consent is attached as **Exhibit 1**.

25.     Gonzales brings this class and collective action on behalf of himself and other similarly situated Redpath employees who were also subject to Redpath's pre/post shift off the clock policy and/or subsistence pay scheme.

26.     The FLSA collective of similarly situated employees is defined as:

> **All hourly Redpath employees who worked during the past 3 years through final resolution of this action ("FLSA Collective Members").**

27.     Gonzales also seeks to represent a class under Nevada law pursuant to FED. R. CIV. P. 23.

28.     The Nevada class of similarly situated employees is defined as:

> **All hourly Redpath employees who worked in Nevada during the past 4 years through final resolution of this action ("Nevada Class Members").**

29.     The FLSA Collective Members and Nevada Class Members are collectively referred to as the "Hourly Employees."

30.     Redpath is an Arizona corporation headquartered in Sparks, Nevada.

31.     Redpath may be served with process by serving its registered agent: **C T Corporation System, 701 S. Carson St., Ste. 200, Carson City, Nevada 89701.**

## FLSA COVERAGE

32.     At all relevant times, Redpath has been an "employer" within the meaning of the FLSA. 29 U.S.C. § 203(d).

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT
*Gonzales v. Redpath USA Corporation*

33.     At all relevant times, Redpath has been an "enterprise" within the meaning of the FLSA. 29 U.S.C. § 203(r).

34.     At all relevant times, Redpath has been an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of the FLSA because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials—such as personal protective equipment, tools, drills, computers, tablets, etc.—that have been moved in or produced for commerce. 29 U.S.C. § 203(s)(1).

35.     At all relevant times, Redpath has had an annual gross volume of revenue made or business done of over $1,000,000 each year.

36.     At all relevant times, Gonzales and the other Hourly Employees have been Redpath's "employees" within the meaning of the FLSA. 29 U.S.C. § 203(e).

37.     At all relevant times, Gonzales and the other Hourly Employees have been engaged in commerce or in the production of goods for commerce.

### FACTS

38.     Redpath touts itself as "a premier full-service global underground mining contractor . . . [with] the expertise, track record and qualifications to support any scope of work . . . from [its] offices and facilities across the globe."[1]

39.     To meet its business objectives, Redpath hires workers, like Gonzales and the other Hourly Employees.

40.     While exact job titles and job duties may differ, Gonzales and the other Hourly Employees are all subject to Redpath's same or similar illegal policies—its pre/post shift off the clock policy and per diem pay scheme—while performing the same or similar work.

41.     For example, Gonzales worked for Redpath as an underground miner from approximately June 2024 until March 2025.

---

[1] https://www.redpathmining.com/en/ (last visited August 12, 2025).

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT
*Gonzales v. Redpath USA Corporation*

42.    As an underground miner, Gonzales's job duties included operating forklifts and roof bolters, as well as digging and mucking underground.

43.    Gonzales' job duties likewise included donning and doffing safety gear and protective clothing, gathering and storing tools and equipment, and washing up, on Redpath's (or its clients') premises, "off the clock," before and after his scheduled shifts.

44.    Redpath paid Gonzales by the hour.

45.    Redpath paid Gonzales approximately $23 an hour, plus an hourly bonus.

46.    Throughout his employment, Gonzales worked 7 days a week for approximately 13 hours a day "on the clock" (91 hours a week), generally for two weeks on followed by a week off.

47.    Likewise, the other Hourly Employees generally work approximately 7 days a week for approximately 13 hours a day "on the clock" (91 hours a week).

48.    Redpath records Gonzales' and the other Hourly Employees' "on the clock" hours through the timekeeping system it selects and controls.

49.    But throughout their employment, Redpath has not paid Gonzales and the other Hourly Employees for all their hours worked.

50.    Instead, Redpath subjects Gonzales and the other Hourly Employees to its pre/post shift off the clock pay scheme.

51.    For example, Redpath required Gonzales to dress out in his protective clothing and safety gear (including hard hat, head lamp, reflective clothing, ear protection, steel toed boots, safety glasses, gloves, mining belt, GPS tracker, and self-contained self-rescuer), gathering and preparing tools and equipment fundamentally necessary to performing his job, including hand tools, prior to his shifts, "off the clock," and without compensation.

52.    This took Gonzales approximately an hour each workday.

53.    Gonzales could not perform his job duties in accordance with Redpath's policies, procedures, and expectations without this protective clothing, safety gear, tools, and equipment.

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT
*Gonzales v. Redpath USA Corporation*

54.     Gonzales could not safely perform his job duties in accordance with Redpath's policies, procedures, and expectations without this protective clothing, safety gear, tools, and equipment.

55.     Indeed, much of the safety gear Gonzales must utilize is mandated by federal regulation. *See e.g.*, 29 C.F.R. § 1910.132; 30 C.F.R. § 56, *et seq*; 30 C.F.R. § 57, *et seq*.

56.     The donning of protective clothing and safety gear and gathering of tools and equipment forms are integral and indispensable work duties for Gonzales fundamentally intertwined with his other underground mining job duties.

57.     Likewise, Redpath required Gonzales to remove and store his safety gear and protective clothing, store his tools and equipment, and wash up after his shifts, "off the clock" and without compensation.

58.     This took Gonzales approximately 30 minutes each workday.

59.     Gonzales could not perform his job duties in accordance with Redpath's policies, procedures, and expectations without removing and storing his safety gear and protective clothing, storing his tools and equipment, and washing up each workday.

60.     Gonzales could not safely perform his job duties in accordance with Redpath's policies, procedures, and expectations without removing his safety gear and protective clothing, washing and inspecting his safety gear, storing his tools and equipment, and washing up each day.

61.     Removing safety gear and protective clothing, storing tools and equipment, and washing up, are therefore integral and indispensable work duties for Gonzales.

62.     But under its pre/post shift off the clock policy, Redpath does not compensate Gonzales for the same.

63.     Thus, because of its pre/post shift off the clock policy, Redpath fails to pay Gonzales wages for all hours worked, including overtime wages for all overtime hours worked, in violation of the FLSA and Nevada Law.

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT
*Gonzales v. Redpath USA Corporation*

64.     Gonzales and the other Hourly Employees perform their jobs under Redpath's supervision and use materials, equipment, and technology Redpath approves and supplies.

65.     Redpath requires Gonzales and the other Hourly Employees to follow and abide by common work, time, pay, and overtime policies and procedures in the performance of their jobs.

66.     At the end of each pay period, Gonzales and the other Hourly Employees receive wages from Redpath that are determined by common systems and methods that Redpath selects and controls.

67.     But, just as with Gonzales, Redpath fails to pay the other Hourly Employees for all their hours worked.

68.     Indeed, Redpath subjects the other Hourly Employees to its pre/post shift off the clock policy.

69.     Specifically, like Gonzales, Redpath requires the other Hourly Employees to dress out in their protective clothing and safety gear (including hard hat, head lamp, reflective clothing, ear protection, steel toed boots, safety glasses, gloves, GPS tracker, SCSR), gather and prepare other tools and equipment, such as hand tools, fundamentally necessary to performing their mining job duties, prior to their scheduled shifts, "off the clock," and without compensation.

70.     As with Gonzales, much of the safety gear the other Hourly Employees must utilize is mandated by federal regulation. *See e.g.*, 29 C.F.R. § 1910.132; 30 C.F.R. § 56, *et seq*; 30 C.F.R. § 57, *et seq*.

71.     And Redpath requires the other Hourly Employees to remove and store their safety gear and protective clothing, store other their tools and equipment, and wash up after "clocking out" for their shifts, "off the clock" and without compensation.

72.     But, like Gonzales, the other Hourly Employees are forced to perform this compensable work "off the clock" before and/or after their scheduled shifts.

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT
*Gonzales v. Redpath USA Corporation*

73.    And, just as with Gonzales, Redpath does not pay the other Hourly Employees for this integral and indispensable work they perform "off the clock" before and after their scheduled shifts.

74.    And like Gonzales, these job duties take the other Hourly Employees approximately an hour and 30 minutes each workday.

75.    Redpath fails to exercise its duty as the Hourly Employees' employer to ensure they are not performing work "off the clock" on its premises that Redpath does not want performed.

76.    And Redpath knows, should know, or recklessly disregards whether Gonzales and the other Hourly Employees routinely perform work "off the clock," and without compensation, before and after their scheduled shifts.

77.    Thus, Redpath requires, requests, suffers, or permits Gonzales and the other Hourly Employees to work "off the clock," without compensation, before and after their scheduled shifts.

78.    Despite accepting the benefits, Redpath does not pay Gonzales and the other Hourly Employees for the compensable work they perform "off the clock" before and after their scheduled shifts.

79.    Thus, under Redpath's pre/post shift off the clock policy, Gonzales and the other Hourly Employees are denied wages, including overtime wages, for compensable work they perform "off the clock" before and after their scheduled shifts, in violation of the FLSA and Nevada law.

80.    Further, throughout their employment, Redpath paid Gonzales and the other Hourly Employees according to its subsistence pay scheme.

81.    Redpath pays the Hourly Employees subsistence pay that is not formulated to approximate the expenses incurred by its Hourly Employees.

82.    Rather, Redpath only pays the Hourly Employees this additional compensation on days they actually work.

83.    Redpath knows this additional pay must be, but is not, included in the Hourly Employees' regular rates of pay for overtime purposes.

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT
*Gonzales v. Redpath USA Corporation*

Case 3:25-cv-00470-ART-CLB     Document 1     Filed 09/04/25     Page 10 of 25

84.     For example, during the pay period ending February 15, 2025, Redpath paid Gonzales $900 in subsistence pay:

| Earnings | rate | hours | this period | year to date |
|---|---|---|---|---|
| Regular | 21.0000 | 40.00 | 840.00 | 3,600.00 |
| Overtime | 31.5000 | 77.30 | 2,434.95 | 6,816.45 |
| BONUS | | | 520.00 | 3,640.00 |
| BONUS OT | | | 1,507.35 | 6,460.35 |
| SUBSISTENCE | | | 900.00 | 2,800.00 |
| Travel | | | 200.00 | 800.00 |
| **Gross Pay** | | | **$6,402.30** | 24,116.80 |

85.     During the pay period ending January 31, 2025, Redpath paid Gonzales $500 in subsistence pay:

| Earnings | rate | hours | this period | year to date |
|---|---|---|---|---|
| Regular | 23.0000 | 40.00 | 920.00 | 2,760.00 |
| Overtime | 34.5000 | 22.40 | 772.80 | 4,381.50 |
| BONUS | | | 1,040.00 | 3,120.00 |
| BONUS OT | | | 873.60 | 4,953.00 |
| SUBSISTENCE | | | 500.00 | 1,900.00 |
| Travel | | | 200.00 | 600.00 |
| **Gross Pay** | | | **$4,306.40** | 17,714.50 |

86.     During the pay period ending December 31, 2024, Redpath paid Gonzales only $200 in subsistence pay:

| Earnings | rate | hours | this period | year to date |
|---|---|---|---|---|
| Regular | 23.0000 | 26.40 | 607.20 | 607.20 |
| BONUS | | | 686.40 | 686.40 |
| SUBSISTENCE | | | 200.00 | 200.00 |
| Travel | | | 200.00 | 200.00 |
| **Gross Pay** | | | **$1,693.60** | 1,693.60 |

87.     Despite this additional pay Redpath failed to calculate the per diem into the Hourly Employee's regular rate of pay for the purpose of calculating overtime wages.

88.     As a result, Redpath fails to pay Gonzales and the other Hourly Employees overtime wages at a rate not less than 1.5 times their regular rates of pay—based on all remuneration—for hours worked over 40 a workweek, in violation of the FLSA and Nevada law.

- 10 -
ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT
*Gonzales v. Redpath USA Corporation*

CLASS & COLLECTIVE ACTION ALLEGATIONS

89. Gonzales brings his claims as a class and collective action under Section 216(b) of the FLSA and under Nevada law pursuant to FED. R. CIV. P. 23.

90. Like Gonzales, the other Hourly Employees are victimized by Redpath's pre/post shift off the clock policy and/or subsistence pay scheme.

91. Other Hourly Employees worked with Gonzales and indicated they were paid in the same manner, performed similar work, and were subject to Redpath's same pre/post shift off the clock policy and subsistence pay scheme.

92. Based on his experiences with Redpath, Gonzales is aware Redpath's pre/post shift off the clock policy and subsistence pay scheme were imposed on other Hourly Employees.

93. The Hourly Employees are similarly situated in the most relevant respects.

94. Even if their job duties and locations might vary, these differences do not matter for the purpose of determining their entitlement to wages for all hours worked, including overtime wages.

95. Rather, the Hourly Employees are held together by Redpath's pre/post shift off the clock policy and subsistence pay scheme, which systematically deprive Gonzales and the other Hourly Employees of wages, including overtime wages, for all hours worked, including hours in excess of 40 in a workweek.

96. Therefore, the specific job titles or locations of the Hourly Employees do not prevent class or collective treatment.

97. Redpath's failure to pay these employees "straight time" and overtime wages at the rates required by the FLSA and/or Nevada law results from generally applicable, systematic policies, and practices that are not dependent on the personal circumstances of the Hourly Employees.

98. The Hourly Employees are denied wages and overtime wages at the required premium rate for all overtime hours worked when they work more than 40 hours in a workweek.

99. Redpath's records show the number of hours the Hourly Employees worked "on the clock" each workweek.

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT
*Gonzales v. Redpath USA Corporation*

100.   The back wages owed to Gonzales and the other Hourly Employees can therefore be calculated using the same formula applied to the same records.

101.   Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Redpath's records, and there is no detraction from the common nucleus of liability facts.

102.   Therefore, the issue of damages does not preclude class or collective treatment.

103.   Gonzales' experiences are therefore typical of the experiences of the other Hourly Employees.

104.   Gonzales has no interest contrary to or in conflict with, the other Hourly Employees that would prevent class or collective treatment.

105.   Gonzales has an interest in obtaining the unpaid wages owed to the Hourly Employees under federal and Nevada law.

106.   Gonzales and his counsel will fairly and adequately protect the interests of the other Hourly Employees.

107.   Gonzales retained counsel with significant experience in complex class and collective action litigation.

108.   A class and collective action is superior to other available means for fair and efficient adjudication of this action.

109.   Absent this class and collective action, many Hourly Employees will not obtain redress for their injuries, and Redpath will reap the unjust benefits of violating the FLSA and Nevada law.

110.   Further, even if some of the Hourly Employees could afford individual litigation, it would be unduly burdensome.

111.   Indeed, the multiplicity of actions would create hardship for the Hourly Employees, the Court, and Redpath.

112.   Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Hourly Employees' claims.

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT
*Gonzales v. Redpath USA Corporation*

113. The questions of law and fact that are common to each Hourly Employee predominate over any questions affecting solely the individual Hourly Employees.

114. Among the common questions of law and fact are:

    a.    Whether Redpath's pre/post shift off the clock policy failed to compensate the Hourly Employees for all hours worked;

    b.    Whether Redpath's pre/post shift off the clock policy deprived the Hourly Employees of overtime when they worked more than 40 hours in a workweek;

    c.    Whether Redpath's pre/post shift off the clock policy deprived the Hourly Employees of earned wages upon termination of employment;

    d.    Whether Redpath's per diem pay scheme deprived the Hourly Employees of overtime at the required rate, based on all remuneration, when they worked more than 40 hours in a workweek;

    e.    Whether Redpath's subsistence pay scheme deprived the Hourly Employees of earned overtime wages at the required rates for all hours worked in excess of 40 in a workweek;

    f.    Whether Redpath's decision not to pay the Hourly Employees all "straight time" and overtime wages due was made in good faith; and

    g.    Whether Redpath's violations were willful?

115. Redpath's pre/post shift off the clock policy and per diem pay scheme deprived Gonzales and the other Hourly Employees of wages, including overtime wages, they are owed under federal and Nevada law.

116. There are many similarly situated Hourly Employees who have been denied wages, including overtime wages, in violation of the FLSA and would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

117.    The Hourly Employees are known to Redpath and can be readily identified and located through Redpath's business and personnel records.

### REDPATH'S VIOLATIONS WERE WILLFUL

118.    Redpath knew it was subject to the FLSA's overtime provisions and Nevada Law's minimum wage, hours of work, overtime, and earned wages provisions.

119.    Redpath knew the FLSA and Nevada law required it to pay non-exempt employees, including the Hourly Employees, overtime at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek.

120.    Redpath knew each Hourly Employee worked more than 40 hours in at least one workweek during the relevant period.

121.    Redpath knew it paid the Hourly Employees according to its pre/post shift off the clock policy and/or subsistence pay scheme.

122.    Redpath knew it had a duty to ensure its Hourly Employees were not performing work "off the clock," without pay.

123.    Redpath knew it required the Hourly Employees to don and doff safety gear and protective clothing, gather, prepare, and store tools and equipment, and wash-up "off the clock."

124.    Redpath knew it controlled the Hourly Employees' work procedures.

125.    Redpath knew its Hourly Employees' mandatory "off the clock" work was a fundamental requirement of their jobs.

126.    Redpath knew its Hourly Employees' mandatory "off the clock" work was an integral and indispensable requirement of their jobs.

127.    Redpath knew its Hourly Employees routinely performed this daily, required "off the clock" work for Redpath's benefit.

128.    In other words, Redpath knew its Hourly Employees performed compensable work (*e.g.*, donning/doffing their safety gear and protective clothing, gathering and storing tools and equipment, washing-up) "off the clock" and without compensation.

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT
*Gonzales v. Redpath USA Corporation*

129.    Redpath knew its pre/post shift off the clock policy and subsistence pay scheme failed to compensate the Hourly Employees for all hours worked, including overtime hours, at the required rates.

130.    Redpath knew, should have known, or showed reckless disregard for whether its conduct described in this Complaint violated the FLSA and Nevada law.

131.    Redpath knowingly, willfully, and/or in reckless disregard carried out its pre/post shift off the clock policy and per diem pay scheme that systematically deprived the Hourly Employees of earned straight time and overtime wages for their hours worked in excess of 40 in a workweek, in violation of the FLSA and Nevada law.

## COUNT I
### FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA
### (FLSA COLLECTIVE)

132.    Gonzales bring his FLSA claim as a collective action on behalf of himself and the other FLSA Collective Members pursuant to 29 U.S.C. § 216(b).

133.    Redpath violated, and is violating, the FLSA by employing non-exempt employees (Gonzales and the other FLSA Collective Members) in a covered enterprise for workweeks in excess of 40 hours without paying them overtime wages at rates of at least 1.5 times their regular rates of pay—based on all remuneration—for all hours worked in excess of 40 in a workweek.

134.    Redpath's unlawful conduct harmed Gonzales and the other FLSA Collective Members by depriving them of overtime wages they are owed.

135.    Accordingly, Redpath owes Gonzales and the other FLSA Collective Members the difference between the rate actually paid and the overtime wages actually earned.

136.    Because Redpath knew, or showed reckless disregard for whether, its pre/post shift off the clock policy and/or per diem pay scheme violated the FLSA, Redpath owes Gonzales and the other FLSA Collective Members these wages for at least the past 3 years.

137.    Redpath is also liable to Gonzales and the other FLSA Collective Members for an amount equal to all their unpaid wages as liquidated damages.

- 15 -
ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT
*Gonzales v. Redpath USA Corporation*

138.    Finally, Gonzales and the other FLSA Collective Members are entitled to recover all reasonable attorney's fees and costs incurred in this action.

### COUNT II
### FAILURE TO PAY FOR ALL HOURS WORKED
### (NEVADA CLASS MEMBERS)

139.    Gonzales brings his claim for failure to pay for all hours worked as a class action on behalf of himself and the other Nevada Class Members under Nevada law pursuant to FED. R. CIV. P. 23.

140.    Gonzales has a private cause of action for unpaid wages pursuant to NRS 608.140. *See Neville v. Eighth Judicial District Court in and for County of Clark*, 406 P.3d 777, 783 (Nev. 2017).

141.    At all relevant times, Redpath was subject to Nevada law because it was (and is) an "employer" within the meaning of Nevada law. *See* Nev. Rev. Stat. § 608.011.

142.    At all relevant times, Redpath employed Gonzales and each Hourly Employee as its covered "employees" within the meaning of Nevada law. *See* Nev. Rev. Stat. § 608.010.

143.    NRS 608.016 provides that "an employer shall pay to the employee[s] wages for each hour the employee[s] worked." Nev. Rev. Stat. § 608.016.

144.    Specifically, pursuant to the Nevada Administrative Code, hours worked includes "all time worked by the employee at the direction of the employer, including time worked by the employee that is outside the scheduled hours of work of the employee." Nev. Admin. Code 608.115(1).

145.    Redpath failed to compensate Gonzales and the other Nevada Class Members for all hours worked, as described in this Complaint.

146.    Accordingly, Gonzales "bring[s] a civil action to recover the difference between the amount paid to [Gonzales and the Nevada Class Members] and the amount of the minimum wage," for each hour worked. Nev. Rev. Stat. § 608.260.

147.    As noted, Redpath did not compensate Gonzales and the other Nevada Class Members for integral and indispensable work before and after their shifts, performed under Redpath's direction and control and on Redpath's (or its clients') premises.

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT
*Gonzales v. Redpath USA Corporation*

148.    Nevada's Minimum Wage Amendment to the Nevada Constitution, Nev. Const. Art. 15, § 16, guarantees a minimum wage for each individual hour worked, rather than as an average over a workweek. *See Porteous v. Capital One Servs. II, LLC*, 809 F. App'x 354, 357 (9th Cir. 2020).

149.    Gonzales and the other Nevada Class Members have been deprived of their rightfully earned wages as a direct and proximate result of Redpath's company-wide policies and practices.

150.    As a direct and proximate result, Gonzales and the other Nevada Class Members have suffered, and continue to suffer, substantial damages.

151.    Redpath regularly, willfully, and repeatedly failed and continues to fail to make, keep, and preserve accurate time records required by NRS 608.115, with respect to Gonzales and the Nevada Class Members.

152.    Through this unlawful course of conduct, Redpath has deprived and continues to deprive Gonzales and the Nevada Class Members of records necessary to calculate with precision the compensation due to them.

153.    Redpath's actions were (and are) willfully oppressive, fraudulent and malicious, entitling Gonzales and the Nevada Class Members to punitive damages.

154.    Redpath's violations were intentional.

155.    In accordance with NRS 608.140, demand has been made to Redpath for wages and penalties due on a class-wide basis, in writing, at least 5 days before this suit was filed.

156.    Accordingly, Gonzales and the Nevada Class Members are entitled to recover their regular hourly rate of pay or the minimum wage rate, whichever is higher, for all unpaid hours worked, punitive damages, plus costs, interest, attorneys' fees, and other appropriate relief under Nevada law, including, but not limited to all damages, fees and costs, available under Nevada law. *See* Nev. Rev. Stat. § 608.005 *et seq.*

## COUNT III
### FAILURE TO PAY MINIMUM WAGES
(NEVADA CLASS MEMBERS)

157.    Gonzales brings his failure to pay minimum wages claim as a class action on behalf of himself and the other Nevada Class Members under Nevada law and pursuant to FED. R. CIV. P. 23.

158.    Gonzales has a private cause of action for unpaid wages pursuant to NRS 608.140. *See Neville v. Eighth Judicial District Court in and for County of Clark*, 406 P.3d 777, 783 (Nev. 2017).

159.    At all relevant times, Redpath was subject to Nevada law because Redpath was (and is) an "employer" within the meaning of Nevada law. *See* Nev. Rev. Stat. § 608.011.

160.    At all relevant times, Redpath employed Gonzales and each Nevada Class Member as its covered "employees" within the meaning of Nevada law. *See* Nev. Rev. Stat. § 608.010.

161.    Nev. Const. Art. 15, § 16 sets forth the minimum wage requirements in the State of Nevada. Section 16 provides that:

> The provisions of the section may not be waived by agreement between an individual employee and an employer. . . . An employee claiming violation of the section may bring an action against his or his employer in the courts of the State to enforce the provisions of the section and shall be entitled to all remedies available under the law or in equity appropriate to remedy any violation of the section, including but not limited to back pay, damages, reinstatement or injunctive relief. An employee who prevails in any action to enforce the section shall be awarded his or his reasonable attorney's fees and costs.

162.    Accordingly, Gonzales and the Nevada Class Members are entitled to recover their regular hourly rate of pay or the minimum wage rate, whichever is higher, for all unpaid hours worked, plus costs, interest, attorneys' fees, and other appropriate relief under Nevada law, including, but not limited to all damages, fees and costs, available under Nevada law.

## COUNT IV
### FAILURE TO PAY OVERTIME WAGES
(NEVADA CLASS MEMBERS)

163.    Gonzales brings his failure to pay overtime claim as a class action on behalf of himself and the other Nevada Class Members under Nevada law and pursuant to Fed. R. Civ P 23.

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT
*Gonzales v. Redpath USA Corporation*

164.    Gonzales has a private cause of action for unpaid overtime wages pursuant to NRS 608.140. *See Neville v. Eighth Judicial District Court in and for County of Clark*, 406 P.3d 777, 783 (Nev. 2017).

165.    At all relevant times, Redpath was subject to Nevada law because Redpath was (and is) an "employer" within the meaning of Nevada law. *See* Nev. Rev. Stat. § 608.011.

166.    At all relevant times, Redpath employed Gonzales and each Nevada Class Member as its covered "employees" within the meaning of Nevada law. *See* Nev. Rev. Stat. § 608.010.

167.    Nevada law requires that employers, such as Redpath, pay employees, such as Gonzales and the Nevada Class Members at least 1.5 times their regular rate of pay for all hours worked in excess of 40 a workweek. Nev. Rev. Stat. § 608.018(2).

168.    Gonzales and the Nevada Class Members have been deprived of their overtime wages at the required rate—based on all remuneration—for all hours worked in excess of 40 a workweek as a direct and proximate result of Redpath's pre/post shift off the clock policy and per diem pay scheme.

169.    Redpath regularly, willfully, and repeatedly failed and continues to fail to make, keep, and preserve accurate time records required by NRS 608.115, with respect to Gonzales and the Nevada Class Members.

170.    Through this unlawful course of conduct, Redpath has deprived and continues to deprive Gonzales and the Nevada Class Members of records necessary to calculate with precision the overtime compensation due to them.

171.    Redpath's actions were willfully oppressive, fraudulent and malicious, entitling Gonzales and the Nevada Class Members to punitive damages.

172.    Redpath's violations were intentional.

173.    In accordance with NRS 608.140, demand has been made to Redpath for wages and penalties due on a class-wide basis, in writing, at least 5 days before this suit was filed.

174.    Accordingly, Gonzales and the Nevada Class Members are entitled to recover unpaid overtime wages owed, punitive damages, plus costs, interest, attorneys' fees, and other appropriate

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT
*Gonzales v. Redpath USA Corporation*

relief under Nevada law, including, but not limited to all damages, fees and costs, available under Nevada law. *See* N.R.S. § 608.005 *et seq.*

<u>COUNT V</u>
FAILURE TO PAY ALL WAGES UPON TERMINATION
(NEVADA CLASS)

175.    Gonzales brings his failure to timely pay wages claim as a class action on behalf of himself and the other Nevada Class Members under Nevada law and pursuant to FED. R. CIV. P. 23.

176.     Gonzales has a private cause of action for unpaid wages pursuant to NRS 608.140. *See Neville v. Eighth Judicial District Court in and for County of Clark*, 406 P.3d 777, 783 (Nev. 2017).

177.    At all relevant times, Redpath was subject to Nevada law because Redpath was (and is) an "employer" within the meaning of Nevada law. *See* Nev. Rev. Stat. § 608.011.

178.    At all relevant times, Redpath employed Gonzales and each Nevada Class Member as its covered "employees" within the meaning of Nevada law. *See* Nev. Rev. Stat. § 608.010.

179.    When an employer, such as Redpath, terminates an employee, such as Gonzales or the Nevada Class Members, their wages and compensation earned but unpaid at the moment of discharge become due and payable immediately and become due and payable to a quitting or resigning employee within 7 days or the next regular payday. Nev. Rev. Stat. §§ 608.020 and 608.030.

180.    Employers that do not pay discharged employees all earned wage "[w]ithin 3 days after the wages or compensation of a discharged employee becomes due" and pay quitting or resigning employees "on the day the wages or compensation is due" are subject to a penalty equivalent to "the wages or compensation of the employee at the same rate from the day the employee resigned, quit or was discharged or placed on nonworking status until paid or for 30 days, whichever is less." Nev. Rev. Stat. 608.040(1)(a-b).

181.    NRS 608.050 grants an "employee lien" to each discharged or laid-off employee for the purpose of collecting the wages or compensation owed to them "in the sum agreed upon in the contract of employment for each day the employer is in default, until the employee is paid in full,

without rendering any service therefor; but the employee shall cease to draw such wages or salary 30 days after such default." Nev. Rev. Stat. § 608.050.

182.    By failing to pay Gonzales and the Nevada Class Members for all hours worked (including minimum wages, regular wages, and/or overtime wages owed) at the required rates based on all remuneration, in violation of Nevada law, Redpath has failed to timely pay all wages due and owing to Gonzales and the Nevada Class Members who have separated their employment.

183.    Redpath's violations were intentional.

184.    In accordance with NRS 608.140, demand has been made to Redpath for wages and penalties due on a class-wide basis, in writing, at least 5 days before this suit was filed.

185.    Gonzales and the Nevada Class Members who are no longer employed by Redpath, are entitled to recover an additional 30 days' wages under NRS 608.050, plus costs, interest, and attorneys' fees, as provided by Nevada law, and all other appropriate relief under Nevada law including, but not limited to all available damages and penalties.

**JURY DEMAND**

186.    Gonzales demands a trial by jury on all Counts.

**RELIEF SOUGHT**

WHEREFORE, Gonzales, individually and on behalf of the other Hourly Employees, seeks the following relief:

  a.    An Order designating this lawsuit as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) be sent to the FLSA Collective Members allowing them to join this action by filing a written notice of consent;

  b.    An Order designating this lawsuit as a class action pursuant to FED. R. CIV. P. 23;

  c.    An Order appointing Gonzales and his counsel to represent the interests of the Hourly Employees;

- 21 -

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT
*Gonzales v. Redpath USA Corporation*

d.   An Order finding Redpath liable to Gonzales and the Hourly Employees for their unpaid overtime wages, liquidated damages, and any penalties, owed under the FLSA, plus interest;

e.   An Order finding Redpath liable to Gonzales and the Hourly Employees for their unpaid minimum wages, overtime wages, earned wages, penalties, and all damages, including punitive damages, owed and available under Nevada law, plus interest;

f.   A Judgment against Redpath awarding Gonzales and the Hourly Employees all their unpaid wages, including overtime wages, liquidated damages, statutory damages, and any other penalties available under the FLSA and/or Nevada law;

g.   An Order awarding attorney's fees, costs, and expenses;

h.   Pre- and post-judgment interest at the highest applicable rates; and

i.   Such other and further relief as may be necessary and appropriate.

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT
*Gonzales v. Redpath USA Corporation*

Dated: September 3, 2025

Respectfully submitted,

**RODRIGUEZ LAW OFFICES, P.C.**

By: */s/ Esther Rodriguez*
Esther C. Rodriguez
Nevada State Bar No. 006473
10161 Park Run Drive, Suite 150
Las Vegas, Nevada 89145
Tel: (702) 320-8400; Fax: (702) 320-8401
info@rodriguezlaw.com

Alyssa J. White*
TX Bar No. 24073014
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Tel: (713) 352-1100; Fax: (713) 352-3300
awhite@mybackwages.com

*Pro hac vice application forthcoming*

**ATTORNEYS FOR GONZALES &
THE HOURLY EMPLOYEES**

ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT
*Gonzales v. Redpath USA Corporation*

# EXHIBIT 1

**CONFIDENTIAL FAIR LABOR STANDARDS ACT EMPLOYMENT SERVICES CONSENT**

Print Name: Isiah Gonzales

1.  I hereby consent to make a claim against ___The Redpath Group___ to pursue my claims of unpaid overtime during the time that I worked with the company.

2.  I designate the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC as my attorneys to prosecute and make decisions concerning my wage claims, the manner and method of conducting this litigation, the entering of any agreements concerning settlement, attorneys' fees and costs, and all other matters pertaining to this lawsuit.

3.  I authorize the law firm and attorneys at JOSEPHSON DUNLAP, LLP and BRUCKNER BURCH PLLC to use this consent to file my claim in a separate lawsuit, class/collective action, or arbitration against ___The Redpath Group___.

4.  I understand that, by filing this Consent Form, I will be bound by the Judgment of the Court or arbitrator on all issues in this case.

Signature: _Isiah Gonzales (May 28, 2025 11:32 MDT)_     Date Signed: May 28, 2025